IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| JIHAAD AMORE HARRISON, | ) | |
| | ) | |
| Plaintiff | ) | 1:22-CV-00105-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| SECRETARY GEORGE LITTLE, LONNIE OLIVER, SCI-ALBION SUPERINTENDENT; SKINNER, SCI-ALBION CAPTAIN; S. A. SMITH, SCI-ALBION CORRECTIONS OFFICER; MS. KEENER, AREA COORDINATOR; PATRICIA THOMPSON, SCI-ALBION DEPUTY; CARL JONES, SCI ALBION; KURT SUESSER, CCPM; MAJ JASON ZILLMAN, CHCA; MIKE EDWARDS, HEALTHCARE ADMINISTRATOR; DR. CRAIG RUSH, CHIEF PSYCHIATRIST; DR. SUSAN EVANS, C. GRIDDINGS, GRIEVANCE COORDINATOR; DHU KOHLER, CORRECTIONAL OFFICER; C/O CRUM, C.O. DANIEL NOLEN, SGT MALUK, DR. LUCAS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM OPINION DENYING MOTION FOR IMMEDIATE RELIEF

ECF NOS. 118, 119 |
| Defendants | ) ) | |

I.  Introduction

Plaintiff Jihaad Amore Harrison, an inmate incarcerated at the State Institution at Albion (SCI-Albion), commenced this *pro se* civil rights action against seventeen employees of the Pennsylvania Department of Corrections (DOC) and a physician who provides medical services at SCI-Albion. ECF No. 13. Her[1] recent motion for immediate injunctive relief (ECF No. 118)

---

[1] Harrison identifies as female and uses the pronouns "she/her/hers."

is one of twenty such motions she has filed since April 21, 2022.[2] *See* ECF Nos. 4, 15, 20, 25, 33, 34, 50, 51, 60, 67, 71, 72, 76, 107, 113, 115, 118, 128, 130, 132. This motion alleged that on June 10, 2023, her "cellmate raped [her] because of [her] criminal case" and that, the following day, she informed an unnamed corrections officer in the Restricted Housing Unit (RHU) about the rape, but her report was ignored. ECF No. 118, ¶¶ 10-11. Shortly after Harrison filed her motion, she sent a letter to the Court identifying her alleged rapist and an original DOC "Mental Health Referral Form" containing an "assessment" of Harrison completed on August 23, 2023. The contents of this assessment appeared to corroborate Harrison's allegations and raised potentially imminent risks to Harrison's safety. *See* ECF No. 119, p. 2.[3]

Given the motion's serious allegations and the urgency of the matters raised in the Mental Health Referral Form, the Court promptly scheduled a conference, followed by an evidentiary hearing. *See* ECF Nos. 121 124. As discussed below, the evidence at the hearing established that Harrison fabricated material portions of the Mental Health Referral Form in an attempt to perpetrate a fraud upon the Court. Thereafter, the Court ordered Harrison to show cause why it should not dismiss her action as a sanction for her attempted fraud and history of abusive litigation tactics throughout this action. *See* ECF Nos. 135, 142.

Harrison filed a response to the Order on December 6, 2023. ECF No. 143. Her response did not dispute that she had falsified the Mental Health Referral Form. *Id.*, ¶ 6. Instead, she attempted to justify her conduct by arguing that "[her] back was against the wall and" she "only wanted to do anything for help." *Id.*

---

[2] The Court had previously admonished Harrison for filing serial injunction motions that were factually unsupported and duplicative. *See* ECF No. 78.

[3] Because the Referral From appeared to include highly sensitive and confidential information regarding Harrison, the Court directed the Clerk to file it under seal. Because the relevant portion of the Referral Form has been determined to be a forgery, the Court has since unsealed the document.

## II.     Standard of Review

The inherent powers of federal courts include the "well-acknowledged" power "to levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (citations omitted).[4] The "extreme sanction" of dismissal "should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff," and a "last, not first, resort." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 866, 869 (3d Cir. 1984). *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Indeed, close calls should "be resolved in favor of reaching a decision on the merits." *Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019) (citing *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994)). Nevertheless, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 414 (W.D. Pa. 1996), *aff'd sub nom. Derzack v. Cnty. of Allegheny Child. & Youth Servs.*, 118 F.3d 1575 (3d Cir. 1997) (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1374 (3d Cir. 1992) (citation omitted)).

The Court of Appeal for the Third Circuit instructs that "[r]egardless of the source of authority invoked, . . . district judges should determine the propriety of punitive dismissals in light of the factors outlined in *Poulis*.'" *Id.* (quoting *Mindek*, 964 F.2d at 1373) (citing *Poulis*

---

[4] Several statutory and procedural rules of conduct authorize the imposition of sanctions. *See Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 400, 412 (W.D. Pa. 1996) (noting that "courts derive their authority and obligation to monitor and control the conduct of litigation from many sources, including statutory (e.g., 28 U.S.C. § 1927) and procedural (e.g., Fed. R. Civ. P. 11(c), 16(f), 37(b), 41(b), 55)"). Each of these sources is typically "tailored to certain categories of participants or aspects of litigation, and ... subject to procedural and substantive limitations peculiar to each." *Id.* Thus, where misconduct clearly implicates a specific rule or statute, the court should ordinarily resort to that rule or statute when crafting a sanction or discipline. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Where no rule applies, however, the court's "inherent power is broad and can be called upon ... to fill-in the interstices between particular rules of conduct." *Derzack*, 173 F.R.D. at 412 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991)).

747 F.2d 863). *See id.* (listing cases). The court must therefore consider:

> 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and 6) the meritoriousness of the claim or defense.

*Id.* at 414 (quoting *Poulis*, 747 F.2d at 868). All six *Poulis* factors need not weigh in favor of dismissal before dismissal is warranted, *Hicks v. Feeney*, 850 F.2d 152 (3d Cir. 1988), and there is no "magic formula" or "mechanical calculation," *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

When appropriate, the court may use its inherent power to dismiss a case as a sanction for the perpetration of a fraud upon the court. *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 397 (D.N.J. 1995). "Fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* (quoting *Aoude v. Mobil Oil Corporation*, 892 F.2d 1115, 1118 (1st Cir.1989)). This *Derzack* Court concluded that

> [w]here fraud on the court is the underlying misconduct upon which the district court is considering dismissal, a modified *Poulis* analysis provides the most suitable framework, the major modification being that 'prejudice' encompasses not only the prejudice to the litigants but also the impact on the judicial system and the threat to the integrity of the courts which cannot command respect if they cannot maintain a level playing field amongst the participants.

173 F.R.D. at 414 (W.D. Pa. 1996). With these principles in mine, the Court will determine whether Harrison's conduct warrants dismissal of her action..

4

III. Discussion

      A. **Harrison's Attempted Fraud Upon the Court**

Harrison's motion for emergency injunctive relief averred that her cellmate raped her on June 10, 2023 while she was in administrative custody and that she reported the rape to an unspecified officer in the Restricted Housing Unit the next day. She further alleged that, over the following two months, she also told other officers and prison personnel about the assault and asked Defendants Thompson and Giddings for the PREA hot line and a rape kit, but none responded. Harrison filed her motion for emergency relief on August 29, 2023. The next day, the Court received a letter from Harrison identifying her alleged rapist as Terrelle Smith and stating that she had not previously alerted the Court of her rape because it "always den[ied] [her] motions for help." ECF No. 119. Harrison's letter also enclosed a Mental Health Referral Form relating to Harrison. The form appeared to be an original rather than a copy. It identified Corrections Officer Herr as having sent the Referral Form to Psychological Service Specialist ("PSS") Thomas Clothier on August 10, 2023 at 9:35 AM and Clothier having received the form on August 18, 2023 at 7:45 AM. The Referral Form includes the following handwritten "assessment" regarding Harrison mental state:

> I/M [inmate] Seems Distraunt (sic). I/M has been tortured by RHU
> Staff. D code/Z code needed? I/M Reports raped by I/M on
> 6/10/2023. D code needed, Z code needed (Rape Kit was needed).
> Mental health housing needed immediately. I/M has been
> extremely traumatized/showing signs of being raped.

ECF No. 19-1. "Thomas Clothier" is handwritten next to "Signature of Staff Completing Assessment" and the assessment is dated August 23, 2023. *Id.*

During the Court's telephone conference on September 6, 2023, Harrison reiterated that she had been raped on June 10 and that numerous officers and counselors had ignored her

5

complaints about this incident. *See* ECF No. 121. Harrison again explained her more than two-month delay in raising these allegations with the Court to the Court's denial of her previous requests for injunctive relief. The Court confirmed with Harrison that she is not presently celled with Terrelle Smith or any other inmate and, therefore, did not face a threat of imminent harm.

During the telephone conference, the Court also received testimony from Bonnie Keener, the Administrative Officer for PREA Complaints at SCI-Albion. She testified that she first learned of Harrison's rape complaint only after Harrison filed her motion for emergency relief on August 28, 2023. Keener testified that, upon receipt of this information, she alerted a PREA coordinator, and an investigation was opened. She explained that had Harrison reported the rape in June, a PREA investigation immediately would have been initiated. She added that the DOC had eliminated the PREA hotline but provided notification alternatives. Keener also testified that a referral form mentioning an inmate's rape would have been directed to her and that she received no such form or other notification regarding an alleged rape of Harrison. She further confirmed that her records showed only that Herr conducted Harrison's annual mental health review on August 10, and that Harrison refused a psych appointment around that time. The conflicting testimony offered by Harrison and Keener, and the potential administrative failure to address Harrison's alleged rape, prompted the Court to schedule an evidentiary hearing. The Court also directed the Defendants to maintain Harrison's single-cell status pending the hearing.

The Court conducted the evidentiary hearing on September 13, 2023. Clothier testified and explained that a Mental Health Referral Form is generally used to refer an inmate for psychiatric or psychological assessment and possible mental health services. Regarding the Mental Health Referral Form produced by Harrison, Clothier explained that on August 10, 2023, Ms. Herr, a member of the psychology department at SCI-Albion, issued the Referral Form in

6

accordance with Harrison's annual PREA Risk Assessment Tool (PRAT). Clothier confirmed that the information written by Ms. Herr in the upper section of the Referral Form is genuine and that she did, in fact, issue the referral. But Clothier further testified that he did not receive this Referral Form, he did not meet with Harrison on August 18, 2023, and he did not write any of the handwritten statements that comprise the "assessment" section of the Referral Form or sign the Referral Form. He thus characterized all portions of the Referral Form purportedly authored or executed by him as forgeries. Harrison responded to Clothier's testimony by re-affirming her allegations and submissions under oath. She further testified that Clothier presented her with the completed Referral Form on August 18 at 7:45 AM and that surveillance video from outside her cell on that date and time would confirm this. Harrison requested that the Court obtain this video. Defendants subsequently submitted an affidavit from the Superintendent's assistant at SCI-Albion, Michelle Tharp, attesting that, according to Clothier's Employee Punch Card, he clocked in at the prison at 7:47 AM on August 18 and "that during this time period, [Clothier] is not seen in the video depicting the area of in front of Inmate Harrison's cell," nor is anyone else observed "interacting with Inmate Harrison at 0745 on August 18, 2023." ECF No. 129-1, ¶ 8.

During the evidentiary hearing, Defendants provided the Court with exemplars of Clothier's handwriting and signature. The Court noted that the handwriting and signature on the Referral Form submitted by Harrison differed materially from the exemplars. The Court also compared the handwriting on the Referral Form to the handwriting on Harrison's handwritten submissions in this case and noted clear similarities between the two.

Based upon the evidence, the Court finds that, at some point after Herr issued the partially completed Referral Form, Harrison obtained it and wrote the dramatically self-serving statements in the assessment section of the form and forged the signature of PSS Clothier. It is

unclear how Harrison obtained the form. It may have been mistakenly delivered to her after she was transferred to the RHU at SCI-Albion or Harrison may have picked up the form from a mail cart or desk. It is clear, however, that inmates are not intended to receive an original or copy of this form because it contains sensitive information and mental impressions regarding the inmate. The bottom of the form reflects that the completed form is to be delivered to medical records with copies provided to the counselor, psychology, and the referral source. Under no circumstances would the original be provided to the inmate.

Based on the entirety of the record, the Court finds that Harrison fabricated evidence to support her claims of prison rape and prison officials failed to investigate and address her report of the rape and as a means to secure secondary gain in this action.[5]

### B. Application of the Modified *Poulis* Factors

In filings and testimony throughout the pendency of this case, Harrison has repeatedly made vague and factually unsupported claims of official misconduct, including claims of harassment, neglect, abuse, and assault. When pressed for details regarding the factual basis for her claims, she has repeatedly failed to provide any or offered contradictory or implausible positions. Her assertions and tactics appear calculated to secure secondary gain, such as a single cell assignment, prison transfer, or monetary relief. This also appears to be the case with her pending motion, only now she has escalated her abusive litigation conduct to the falsification of evidence. The Court will therefore apply the modified *Poulis* criteria to assess whether the extreme sanction of dismissal is warranted.

#### 1. Extent of the Party's Personal Responsibility

---

[5] The Court makes no finding regarding the veracity of Harrison's allegation that Inmate Smith raped him on June 10, 2023. Any claim relating to that alleged incident are distinct from the claims raised in her Amended Complaint in this action. Therefore, the Court's dismissal of this action based upon Harrison's attempted fraud upon the Court is without prejudice to her right to pursue claims arising out of the alleged rape or any alleged inadequate to reports of the rape.

Harrison bears sole responsibility for manufacturing evidence and proffering false testimony to support the forged document. Despite ample opportunity to correct the record and recant her false testimony, has not done so. This factor strongly favors dismissal of this action.

## 2. Prejudice to Adversaries, and Impact on Integrity of Judicial System.

"The type of prejudice that will support dismissal of an action for abusive litigation tactics need not be irreversible, and can consist of the extra costs of repeated delays in filing of motions necessitated by the improper behavior on the part of plaintiffs." *Derzack*, 173 F.R.D. at 415 (citing *Curtis T. Bedwell & Sons v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693–94 (3d Cir.1988) and *Poulis*, 747 F.2d at 868). Here, Harrison's falsified evidence required the Defendants to investigate substance, prepare a written response to her motion, identify and produce witnesses and evidentiary materials, and attend two hearings. Further, Harrison's falsified evidence initially cast doubt upon Keener's credibility and professional conduct. The prejudice to Defendants caused by falsification of evidence and her associated motion also favors dismissal.

Flagrant falsification of evidence such as Harrison engaged in here threatens the integrity of the judicial process and demands a proportionate response. As explained by one court:

> It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society . . . Our system is built on rules and procedures. Litigants who bring matters before this court must conduct themselves in an appropriate fashion .... Further, there is a public interest in discouraging an "anything goes" approach to litigation. Litigants who avail themselves to the jurisdiction of the court to seek redress must conduct themselves within the orderly administration of justice and the rules of the court.

*Derzack*, 173 F.R.D. at 415 (quoting *Perna*, 916 F. Supp. At 401 (citation omitted)). Harrison's

9

knowing and intentional misconduct occurred under the Court's supervision and tainted the litigation process. *See Perna*, 916 F. Supp. at 400. This factor therefore weighs in favor of dismissal.

Harrison's misconduct has also undermined the interests and credibility of victims of prison rape and other abuse. The damage inflicted upon victims of prison rape and the need for prison officials to respond promptly and effectively to reports of such cannot be overstated. In *Farmer v. Brennan*, the Supreme Court acknowledged the devastating effects of prison rape:

> Prison rape not only threatens the lives of those who fall prey to their aggressors, but is potentially devastating to the human spirit. Shame, depression, and a shattering loss of self-esteem accompany the perpetual terror the victim thereafter must endure. … Unable to fend for himself without the protection of prison officials, the victim finds himself at the mercy of larger, stronger, and ruthless inmates.

511 U.S. 825, 853 (1994) (internal citation omitted). Indeed, Congress enacted the Prison Rape Elimination Act (PREA) "in large part … for the purpose of remedying the inadequate response of corrections officials to prison rape." *Lee v. Kramer*, 2017 WL 6729865, at *3 (W.D. Pa. Nov. 8, 2017) (citing 34 U.S.C.§§ 30301 and 30302). While all reports of rape and other physical abuse must be taken seriously, false or manipulated reports only serve to distract officials from pursuing the objectives of the PREA.

### 3. History of Dilatoriness and Abuse.

As noted above and detailed in prior orders of the Court, Harrison has flooded the Court with motions for injunctive relief often comprised of implausible and contradictory allegations. The Court has held numerous conferences and hearings on her motions to address and mitigate concerns raised by Harrison. Despite this, Harrison has persisted in repeatedly filing injunction motions that lack factual support, assert conclusory claims of misconduct against unidentified or

large groups of prison personnel, are untethered to the claims of her Amended Complaint, and fail to demonstrate an imminent risk to her health and safety. This practice has continued even after the Court admonished Harrison concerning her conduct. *See* ECF No. 78. Indeed, Harrison has filed three additional injunction motions since the Court conducted a hearing on the instant motion (none of which motions has related to Harrison's alleged rape or the claims of her Amended Complaint). *See* ECF Nos. 128, 130, 132. Harrison's persistent and abusive filings constitute a history of abuse of the judicial system. This factor favors dismissal.

### 4. Willfulness or Bad Faith.

Harrison willfully created and submitted fabricated evidence to the Court. This misconduct required planning and forethought. This factor also favors dismissal.

### 5. Alternative Sanctions

Cases construing *Poulis* agree that, where confronted by a pro se litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. *See, e.g., Emerson*, 296 F.3d at 191. This case presents such a situation. Harrison's status as a pro se litigant severely limits the effectiveness of lesser sanctions to ensure that this litigation progresses in an orderly fashion. "Moreover, in the fraud on the court context, at least that which rises to the extreme level that we see in this case, monetary sanctions may be inherently inadequate to remedy the harm to the public interest in preserving the integrity of the courts, and in deterring future misconduct on the part of other litigants." *Derzack*, 173 F.R.D. at 417 (citing *Tutu Wells Contamination Lit.*, 162 F.R.D. 46, 78 (D. Vi. 1995)). And, in any event, by entering our prior orders and counseling Harrison on her obligations in this case, the Court essentially employed lesser sanctions, but with no success. Because lesser sanctions have failed to deter Harrison's misconduct, only dismissal remains the only effective sanction available to the Court.

### 6. Meritoriousness of the Claims and Defenses

A claim will be considered meritorious "when the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Poulis*, 747 F.2d at 869-70. "The standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim, and not the summary judgment standard, is applicable in the *Poulis* analysis." *Nelson v. Lowther*, 2022 WL 4124767, at *3 (W.D. Pa. June 2, 2022), *report and recommendation adopted*, 2022 WL 4120627 (W.D. Pa. Sept. 9, 2022) (citing *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008)).

Harrison's Amended Complaint alleges that Defendants violated her First and Eighth Amendment rights under the United States Constitution based on their conduct relative to her transgender status, her conditions of confinement, and her medical care. *See* ECF No. 49. Under the liberal standard applicable to review of pro se pleadings, the Amended Complaint may state at least one colorable claim. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Boag v. MacDougall*, 454 U.S. 364 (1982). However, Defendants' motions to dismiss raise meritorious factual and legal defenses to each of Harrison's claims. *See* ECF Nos. 97, 99. As such, the Court finds that this final factor is neutral.

### IV.   Conclusion

On balance, the Court concludes that the *Poulis* factors strongly favor dismissal as a sanction. While the Court is mindful of the policy in favor of deciding cases on the merits, it holds that dismissal is appropriate when faced with litigation misconduct of the magnitude perpetrated by Harrison. For the foregoing reasons, the Court will enter an order dismissing this action with prejudice.

DATED this 11th day of December, 2023

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE